Foran, J.
This, cause was heard'on the 18th day of October, 1911, in court-room No. 3. Inasmuch as the petition was received on the 7th day of July, 1911, it will be seen that more than forty days elapsed from the receipt of the petition until the hearing thereof. Therefore a brief history of the matter may not be out of order..
On the 7th day of July, 1911, the judge before whom this action was heard happened to be in Boom 1 on private business, when he was approached by certain gentlemen with the petition in question, and asked to receive it under the statutes. The judge said’ to these gentlemen that he was not on duty that day, and referred them to the judge who was then presiding in room No. 1. The gentlemen, however, said that the judge then presiding in room No. 1 was busy, and had referred them to the judge who received the petition. The petition was therefore received as of July 7th, 1911, as a petition to prohibit the sale of intoxicating liquors as a beverage in a residence district in the city of Cléveland, Cuyahoga county, Ohio, and the petition bears- this data:
“Presented to M. A. Foran, Judge Common Pleas Court, on the 7th day of July, 1911. Filed with me this 7th day of July, 1911. at 3 o’clock p. m.” Signed, “M. A. Foran, Judge.”
*451 The first question that arises in this case is: what is the nature and character of the matter itself?
In Valentine v. City of Boston, 37 Mass., 201, it is said, “An action, in the ordinary use, is simply a legal demand of one’s right.” And in the 77 Pa., 480, it was said that “A suit or ae"tion, according to its legal definition, is the lawful demand of one’s right in a court of justice.”
A proceeding, as defined by Black, is as follows:
“In a general sense, the form or manner of conducting judicial business béfore a court or judicial officer. In a more particular sense, any application to a court of justice.” Ex parte McGee, 54 Pac., 1091; 33 Oregon, 165.
The question naturally arises, is this a judicial proceeding, or is it an action?
In Supervisions of Onondaga v. Briggs (N. Y.), 2 Daniel, 26, it is said that ‘ ‘ a judicial act is the performance of a duty which has been confided to judicial officers to be exercised in a judicial way”; and in Smith v. Strother, 8 Pac., 852, it was said that:
“A judicial act is an act done by a member of the.judicial department of government in construing the law, or applying it to a particular state of facts presented for a determination of the rights of the.parties thereunder.”
It can not be said that this is a ministerial act, for the word “judicial” is used ordinarily in two senses, the first to distinguish such bodies or officers as have the power of adjudication upon the rights of persons and property. In the other class of cases it is used to express an act of the mind or judgment upon a proposed course of official action as to an object 'of corporate power, for the consequences of which the official will not be liable, though his act was not well judged; as differing from a ministerial or physical act of an official for which, if negligently done, he or his superior will be held to answer. See 68 N. Y., 88-97.
Section 6140 of the General Code provides that a petition of this kind may be presented to the mayor of a municipal corporation or judge of a court of common pleas, and no matter whether it is presented to a mayor or judge, the section provides that the person to whom it is presented shall examine the petition at a- *452 public hearing, and decide upon the sufficiency thereof; that is, the mayor or judge is to hear and determine the sufficiency of the petition and pass judicially upon its sufficiency, that is, determine whether it complies with the law, or whether it does not comply with the law. In other words, the officer to whom it is presented must determine whether the facts stated in the petition are sufficient; and if a contest arises with respect to its sufficiency, the judicial officer to whom it is presented must determiné and distinguish between the truth and the falsity of the*contest or claims of the parties who make the contest; therefore it must be a judicial act. This becomes all the more evident from the provisions of Section 6152 of the General Code, which provides that the- judge shall cause his findings or decision “to be recorded in the records of his court,” that is, in the journals of the court of common pleas. The statutes do not provide that there shall be kept a special journal in which these proceedings are to be recorded, and it is therefore quite evident that the law provides that a record of all acts and findings of the judge of the court of common pleas in relation to these petitions shall be recorded in regular journals of the court of common pleas, and this can not be done unless the petition is docketed as any other cause or action begun in the court.
It was in this sense that the petition was received on July 7th, 1911. It was set for hearing by the court who received it, for the 25th day of July, 1911. It appears of record that on that day Mr. Shaw and Mr. Hartshorn appeared for certain contestants who were opposing the granting of the prayer of the petition, and that Mr. Earhart appeared for the petitioners; and that, by consent of these attorneys, the hearing was postponed until the 2d day of August, 1911, at 10 a. m. On the 2d day of August, 1911, the same parties appeared in court, and the matter was again postponed by the consent of the parties, until the 18th day of September, 1911.
At the hearing on October 18th, one of the counsel for contestants, in open court, made the statement that on August 2d, when the matter was continued until September 18th, the judge who entered the continuance by consent of the parties said that the matter having come up during the summer term of court *453 he did not feel that Room 1 should hear it, or that it should be heard in that room, and therefore fixed the date for hearing on September 18th, 1911.
With all due deference and respect for the distinguished gentlemen who was presiding at that time in Room 1, I must dissent from this view!
Paragraph 0 of Rule 28 of the' rules of the court of common pleas of this judicial district reads as follows:
“The July term shall be a special term, open for the transaction only of such business as may be done by a judge out of term time, for the granting of judgments by default, under the rules providing therefor, and all other matters that are specially urgent.”
Section 6152 of the statutes under which, this proceeding is brought provides that the mayor or judge shall cause a-certified copy or certificate of his finding, together with the original petition, to be filed with the clerk of the municipal corporation or council not less than five days after such finding, and not more than forty days from the filing of the petition with birtr Although it has been held that this section is not mandatory in eases where it is impossible to comply with it, yet it is elearly apparent that the Legislature intended that a finding should be made, if possible, within forty days from the time the petition was filed with the court or with the mayor; therefore the matter was one of special urgency, and should have been heard in Room 1 during the summer term, especially as the forty days expired August 16, 1911, thirty-three days before the fall term opened. It was elearly a case that comes within the rule already cited, and of such special urgency that it should have been heard. But, as has been stated, the case was continued until September 18th, 1911, on which day the fall term of the court of common pleas of this judicial district opened.
On the 18th day of October, 1911, when this case was being heard, one of the counsel for contestants stated in open court that the judge presiding in Room No. 1 on September 18th, 1911, held and decided that the case could only be heard by the judge who received it.
*454 Although this court has the greatest respect for the legal, ability, judicial integrity and gentlemanly courtesy of the judge then presiding in Room No. 1, he respectfully dissents from this view.
It must be conceded that this is a judicial hearing; that it is an action in court, whether that court be a mayor’s court or a court of common pleas; and simply because the statute, Section 6152, uses the words ‘ ‘ such mayor or judge shall decide the questions raised by the contestants,” it can not be judicially said, or properly said, that only the judge or the maypr who received the petition must hear it. Section 6151 also uses the same words, that is, “such mayor or judge”; but the fallacy of the reasoning upon which the opinion is based, that the judge who received the petition must hear it, can be readily seen when we take into consideration the fact that this is an action, and that it does not abate by the death, of either the judge who received it or any of the petitioners. Suppose the judge who received the petition resigned or died before the cause was set for hearing, or was incapacitated by sickness or out-of the country, can it be said that the action or the right of the petitioners abated ? Certainly not. Of course a mayor’s court is a court of limited jurisdiction,'and, so far as civil jurisdiction .is concerned, the jurisdiction of a mayor is confined to the limits of the municipal corporation of which he is mayor, and therefore it. may be truly said that the mayor of any other corporation could not hear the petition ; but if the mayor who received the petition resigned, became disabled, or unable.to hear the case when it was reached in its order, or suppose he died in the interim, can it be said that the action would abate or that the right of the petitioners would cease and determine? Might not the mayor who succeeded the mayor who received the petition, in case of his death or resignation, hear this petition? We are certainly of the opinion that he not only could, but that it would be his duty to do so. We are certainly of that opinion, and so decide, that is, if this petition had been presented to the mayor of the city of Cleveland on the 7th day of July, and if within forty days thereafter the mayor resigned or died, whoever took his position by authority of the statutes and the laws of the state of Ohio, as mayor of *455 the city, would have a right, and it would be his duty, to hear and determine the questions involved in this petition.
These matters are referred to simply for the reason that we believe some fixed and determined method of procedure should be followed in these eases; and we believe, and so hold, that these petitions, when they are presented to a judge of the court of common pleas, should be presented, in this county at least, in Room No. 1, and received by the judge in that room, that is, the judge then presiding in that room; that the proceeding or action should then be given its regular number on the appearance docket by the clerk of the court, and then advanced on the trial docket in Room No. 1, by the judge therein presiding, for hearing within the forty days prescribed by the statute; and when so advanced, the case should be then referred to the assignment room, and, when reached, sent by the assignment commissioner to whatever room he sees fit to send it, or to whatever court'was not then engaged or whatever room was open to hear it at that time.
This action arises under what is known as local option laws of the state. Local option means the determination, by vote of the people of a town or other minor political community, as to whether or not any licenses to sell intoxicating liquor shall be granted. This is. a principle of law well established in most of the states of the Union, and it is advocated in all of the states. The principle has also been recognized in England and other foreign countries. The principle is based upon the right of the majority to rule, and is the cardinal principle of every democratic or republican form of government. A democracy is a government in which the sovereign power of the state is vested in the people as a whole, and is exercised as directed by them or their elected agents. Mr. Locke has well said: “The majority, having the whole power of the community, may employ that power- in making laws and executing these laws; and when that is done, there is a perfect form of democracy.” Following the etymology of the word, democracy means government by the people, in other words, the vox populi. In a democracy or a monarchy there -necessarily must exist anarchy or order. There .must be either chaos or a master; and in a republic or a de *456 mocracy we recognize the majority as the master, and this master must be obeyed.
These local option laws recognize the right of the majority. Those who favor the right to traffic in intoxicating liquors in a residence district are by these laws given the right to say so; and by one of the sections of this statute, after a territory has been declared dry, or after the sale of intoxicating liquors has been prohibited in a residence district for the space of two years, a majority of the qualified electors of that district may then petition the court to permit the sale of intoxicating liquors in that district; and if the people of the district in which the sale of intoxicating liquors has been prohibited can secure a majority of the qualified electors of the district permitting the sale of intoxicating liquors in that district, that sale must be permitted. So that those who are in favor of the sale of intoxicating liquors in a residence district have the same right, if they form a majority of the qualified electors of the district, as those who are in favor of prohibiting the sale of intoxicating liquors in that district.
It“ is true that a majority sometimes oppresses; that is, if unrestrained, a majority may become as much of a tyrant as the greatest despot, or, as it is stated differently, “Man in multitude may sometimes become as great a tyrant as man in unitude. ” But if we are to have a democratic or republican form of government, we must recognize the master, that is, the majority; and if this majority sometimes goes wrong, as it undoubtedly does, we must wait until an enlightened public conscience corrects the evil. Montesquieu said:
"Government is like all other things in the world: to preserve it, it must be loved. No one ever heard it said that kings do not love monarchy, or that despots hate despotism.”
A republic or a democracy can be no exception to this rule. To establish a republic or a democracy in a country, if does not suffice, nor is it necessary, that a minority desire it, or even wish to impose it. There must be a majority of republicans or democrats as willing to receive it as capable of upholding it. It is true that sometimes the majority oppresses the minority, and it *457 is equally as true that sometimes the minority governs the country or the majority through terror. These things can not be avoided, and they may be blessings in disguise, for when the majority, through mere force of numbers, or the minority through force of terror, go too far, the public conscience is aroused, and the pendulum which was swinging too far either way again vibrates or swings normally.
The laws of this state provide for local option, in counties, townships, municipal corporations, and residence districts of municipal corporations. It is with these latter that we have to deal here.
Section 6141 of the General Code provides that the decision of the mayor or judge, as certified to the clerk or council and recorded by him in the records of the council of a corporation, or a certified copy thereof, provided it shows that a majority of the voters of such residence district were in favor of the prohibiting of the sale of intoxicating liquors as a beverage, in the same residence district, and file the same with the mayor or judge, and if such petition is found sufficient, the sale of intoxicating liquors in that residence district may be permitted. So that it will be seen that, after all, it is a question of the right of the majority of the qualified electors of a residence district to say whether or not intoxicating liquors shall be sold in that district;, and if a majority decide that intoxicating liquors shall not be sold in the district, or if a majority decide that intoxicating liquors may be sold in the district, the minority has no right to complain.
Upon the hearing of this case, Mr. Schwartz, an attorney for one N. C. Guarniers filed a motion asking that the petition be dismissed, for the reason that there had been no judicial finding upon the petition within forty days after the same had been filed with the court. This motion, as well as a similar motion filed by Mr.°Wertschafer in behalf of Stephen B. Ringholz, was overruled, and the court now sees no reason why he should depart from his decision in that respect. To say the least, these motions were not, in the opinion of the court, filed in good faith. These contestants, or the attorneys representing them, did not appear on July 25th, 1911, when this case was set for hearing. *458 Section 6151 of the General Code provides that when such a petition is filed with the mayor or judge, notice of the hearing of such petition shall be published in two newspapers of opposite party politics, published in such municipal corporation, if there be two, and the .notice or publication must stipulate the time and the' place where such judge or mayor will consider the petition. It does not appear from the record that the two contestants making the motions to dismiss, just referred to, appeared on July 25th, or at any time thereafter, and that they first appeared on the 18th day of October, 1911, and for the purpose of making these motions only. It seems to the court that it was the desire of these contestants to. take advantage of any error that might occur, without being financially responsible in any way as contestants.
Our own circuit court, in the matter of the hearing before the Honorable Tom L. Johnson, mayor of the city of Cleveland, and known as Opinion No. 4512, rendered November 1, 1909, said this:
“A further claim was made that the mayor was without jurisdiction to hear the petition, because more than forty days had elapsed from the time of its filing before such hearing was had, and this is based upon the language of the statute, which is that ‘ such mayor shall cause a certified copy or certificate of his findings, together with the original petition, to be filed with the clerk of the municipal corporation or council, not less than five days after such finding, and not more than forty days from the filing of the petition with the mayor. ’ ”
After thus citing the statute, the circuit court of this judicial district states:
“There can be no doubt that this language is directory only, and not mandatory. To hold otherwise would put every petition filed by either those desiring to prohibit or those desiring to prevent prohibition, in peril, because if the mayor were unable to hear the petition within the time directed, by reason-of his health, by reason of other duties, or for any other reason that would prevent his hearing the same, the petition would absolutely go for naught.”
The same reasoning given by Marvin, J., in this case applies with equal force to the opinion or the view of the judge in Room *459 1, when he decided that the court who received the petition was the only one who could hear it; and for the very evident reason that if the court who received the petition should become incapacitated by reason of sickness, or if he should die, or resign, the petition and the prayer of the petitioners would absolutely, go for naught, as our circuit court well said.
One of the main objections raised to this petition by the contestants is, that the burden of proof is upon the petitioners to establish the sufficiency of the petition. This contention is based upon a decision found in 30 Circuit Court Reports, 697 [11 C.C.(N.S.), 351], by the Circuit Court of Hamilton County, the syllabus of which reads as follows:
“A petition under the Jones residence local option law, requiring a public hearing by a mayor or judge, is not prima facie evidence of its sufficiency, except upon failure of any electors of a district to contest it; and the burden of proof rests upon the petitioners to prove such facts; but if an elector seeks to withdraw his own or authorized signature from the petition, he has the burden of establishing fraud or misrepresentation by which it was secured.”
Martin, J., in a decision rendered in the Court of Common Pleas of Montgomery County, March 10, 1908, disregarded this opinion of the Circuit Court of Hamilton County, and refused to follow it, and said:
“The courts of this county have always held in all cases, whether the petition was filed either by the wets or by the drys, that a petition which is correct in form and properly filed in court establishes a prima faciei ease in favor of the petitioners."
We think this reasoning is the correct one, and on every one of these petitions it is stated by the signers that they are qualified electors of the district in which it is sought to prohibit the sale of intoxicating liquors. The questions involved in a matter of this kind are not only ethical and social, but, unfortunately, to some extent political, and this is recognized by the Legislature, for it is provided in the statute that the hearing must be had before the mayor of the municipal corporation in which the residence district is said to be located, or a judge of the county in *460 which the municipal corporation is located, showing very conclusively that the question of locality was considered by the Legislature. It must be admitted that environment has considerable to do with all things, and, unfortunately it has sometimes something to do with judicial decisions; and this court prefers not to follow the decision of the Circuit Court of Hamilton County, for obvious reasons.
In this connection, however, we desire to say that we believe the burden is on the petitioners to show the number of electors who voted at the last municipal election in the proposed residence district. The board of elections has been doing this by certification to the judge or mayor who received the petition, or the court where the proceeding was pending; but the statutes do not require the board of elections to do this. The boobs or records of the board of elections may, however, be brought into court in the usual way.
Martin, J., said further that he preferred to follow the rule laid down in Montgomery county, which relied for its authority upon the decision rendered by Judge Wildman of the circuit court of whose jurisdiction Lucas county is a part. It may be said, in passing, that Judge Wildman held, that where nothing had been done to indicate that the district, as an entirety, does not comply with the requirements of the law to constitute a residence district, it is subject to the provisions of the law.
The court rendering this opinion prefers to follow the views of Judge Martin and Judge Wildman, and in doing so we simply desire to say that any other holding or finding would render the local option law an absolute nullity.
The law provides that a residence district may contain as few as 500 qualified electors, and not more than 5,000 qualified electors. Suppose we had a residence district of about 5,000 qualified electors, and suppose that 3,000 of those electors sign a petition praying that the sale of intoxicating liquors be prohibited in that district, is it to be said that the prayer of this petition shall not be granted unless each and every one of them is subpoenaed and brought into court to testify under oath that he is a qualified elector, that he resides within the district, and has *461 resided in the district for the period required by the statute? It will be seen at a glance that such a holding would make it absolutely impossible to prevent the sale of intoxicating liquors in any residence district. If every man who signs a petition to prevent the sale of intoxicating liquors in a residence district must be subpoenaed into court to testify under oath that he did sign the petition, that he is a qualified elector, that he resides in the district, and at the place or number and street indicated in the petition, the time consumed in hearing such a petition would be interminable. And therefore we hold that when a petition, whether it be to prevent the sale of intoxicating liquors in a residence district, or to permit the sale of intoxicating liquors in a residence district, is presented to a court or to a mayor, and the petition is found to be correct in form and properly filed, the burden is then upon the contestants to establish the fact that those who signed the petition are not qualified electors and do not reside in the district, or have not resided in the district the time required by the statute. Any other holding would be a self-evident absurdity and a contradiction.
It is said, however, by the contestants, that Section 6140 provides that whenever a majority of the qualified electors of any residence district of any municipal corporation sign a petition in favor of the prohibition of the sale of intoxicating liquors as a beverage in such residence district, and then take certain other action, certain results shall follow, and that the following Section, 6141, provides that the decision of the mayor or judge, as certified to the clerk of the municipal corporation or council, and recorded by him in the records of the council of the corporation, or a certified copy thereof, provided it shows that a majority of the voters of such residence district were in favor of prohibiting the sale of intoxicating liquors as a beverage, shall be prima facie evidence that the selling and furnishing and giving away of intoxicating liquors as a beverage, or the keeping of a place where such liquors are for sale, open, or given away, if such selling, furnishing, or giving away, or keeping of such place open occur thirty days after the finding of such mayor or judge, was then and there prohibited and unlawful; and that Section 6142 pro *462 videS that whenever a majority of the qualified electors of any residence district of any municipal corporation in which the sale of intoxicating liquors as a beverage has been prohibited, under the provisions of Section 1 of this act, shall sign a. petition against prohibiting, etc.
These sections are cited for the purpose of showing that it is incumbent upon thé petitioners to prove that a majority of the qualified electors of the residence district signed the petition before the judge or mayor; and they say that the succeeding section, that is, 6149, is inconsistent with these sections, for the reason that it reads as follows:
“The petition provided for in this act shall be deemed sufficient when it is signed by as many qualified electors as equal ‘a majority of the number of votes cast at the last regular municipal election in such residence district, but must, in order to be valid, be filed not later than three months after the signing thereto of the signatures first in order of time. ’ ’
In passing upon the question as to whether or not these sections are inconsistent, it must be remembered that population can, under no circumstances, be said to be a fixed quantity or factor. On page 11, Volume 1, of The American Anthropolotist, it is said: “The limits of population revolve more and more within the sphere of man’s material, mental and moral freedom.” Tn other words, population increases faster in certain districts than it does in others, owing to man’s material, mental and moral freedom, and population decreases in certain districts faster than it' dues in others because of the lack of man’s material, mental and moral freedom.
From the time a petition of this kind is started until it is filed, the law provides that a period of three months may elapse. Now, during this period, the population of the district, or.the number of qualified electors, may increase or diminish materially; and there is no means of determining whether the number of qualified electors in a residence district, say, on the first ,of April, 1911, is greater or less than the number of qualified electors on the first day of July, 1911. Therefore some standard had to be established by which it could be determined what was a majority *463 of the qualified electors necessary to either prohibit the sale of intoxicating liquors in a residence district, or to permit the sale of intoxicating liquors in such district; and the standard established is found in the section just quoted, that is, Section 6149 of the General Code; and that standard is, that the petition, either to permit or to prevent the sale of intoxicating liquors in a residence district, must have attached thereto the names of qualified electors equal to a majority in number of the votes east at the last regular municipal election in such residence district. We think it is a fair standard; in fact we do not know of any. other fairer standard, or any other standard that could be adopted. There is no practical standard except this standard. And we further hold that if the petition was presented to a mayor or a judge, and received and filed by either a mayor or judge on the day next preceding a regular municipal election, the mayor or judge would not be governed by the votes east' in the residence district covered by the petition at the municipal election following the receipt and filing of the petition, but by the votes east in that district at the regular municipal election next preceding the filing and receipt of such petition, that is, the regular municipal election held before such receipt and filing of such petition. And to say that it would be incumbent upon petitioners,, at the time'of the hearing, to show that there was attached to the petition names sufficient to constitute a majority of the number of qualified electors in the residence district at' the time the petition was filed, would be vain and foolish, because it would be utterly impractical 'to prohibit the sale of intoxicating liquors in a residence district or permit the sale of intoxicating liquors if such a requirement had to be complied with. So that the standard established by Section 6349 of the General Code is the only standard, in the opinion of the court, that could be practically established and followed.
The first objection to the petition by the contestants is, that it is insufficient in form, because it is not addressed to the mayor or to a judge of the court of common pleas.
Section 6141 of the statutes provides that the petition must be filed with the mayor of the municipal corporation or with a *464 judge of the court of common pleas of the county in which the municipal corporation' is situated.
We do not believe, and so hold, that the petition need be ad-' dressed to the mayor or to a judge of the county in which the municipal corporation is situated, before it is actually filed with such mayor or such judge. If the petitioners expected to present it to or file it with the mayor, of the city of Cleveland, Ohio, they might have so addressed it to him, but it was not mandatory that they should do so.
Section 6149 of the General Code provides that they might file it any time within three months after the signing thereto of the signatures first in order of time. After the signing of the first signature in order of time, the petitioners had three months within which to secure the required number of signatures, and they had no means of knowing the mayor would be in the city or be in such state of health to receive it when the required number of signatures was obtained. It would have been idle to have addressed it to him during the time they were procuring the signatures. The same reasoning applies with equal force to the name of a judge in Cuyahoga county.' As has been already stated, this petition should have been presented or filed with the judge in Room 1; and while the signatures were being secured they had no means of knowing just what judge would be in Room 1 when they were ready to file it. It is true they might have filed it with any judge of the Court of Common Pleas of Cuyahoga County, Ohio, but as the three months did not expire until the summer vacation began, how were they to know before they were ready to file it just what judge would be in Room 1 or in the county. This objection is frivolous, and will be overruled. All the petitioners were required to do was to present the petition to the 'mayor or to the judge in Room 1, any time within three months after the signing thereto of the signature first in order of time; and when the petition was presented within the time prescribed by statute, to either the mayor or a judge, neither the mayor nor the judge to whom it was presented had any option in the matter. Neither the mayor of the city of Cleveland nor a judge of Cuyahoga county, Ohio, could refuse to receive and file it without being guilty of misfeasance in office.
*465 A judge has no more right to refuse to receive such a petition than he would have to refuse to receive a petition asking for an injunction, or to refuse to grant the injunction if the petition made a case. And when so received and filed by the mayor of the city of Cleveland, or by' a judge of Cuyahoga county, Ohio, it could be heard within forty days thereafter by the mayor of 'the city, whether he was the man who received and filed it dr not; and if it was presented to a judge of the Court of Common Pleas of Cuyahoga County, it could be thereafter heard by any judge of the Court of Common pleas of Cuyahoga County, Ohio. The words in the statute, or the several statutes, “such mayor or such judge,” refer to the official and not to the man.-
The second objection is that the petition does not contain a correct description of any residence section whatsoever. In this respect we find the petition sufficient, and the objection is overruled. The evidence clearly shows that the description of the residence district contained in the petition comes clearly within the requirements of Section 6068, General Code.
So far as the objection that the map attached to petition 22 is defective, in that it does not show the location of all the saloons in the district, we think the objection is well taken, and should be sustained.- The evidence seems to indicate that about June 1st, 1911, a new saloon was opened in this district. All the other maps, or the maps attached to the other petitions, except the map attached to petition 22, show the location of this saloon. Section 6146 provides that all petitions for signatures shall have a map or drawing attached showing the outlines of the district and the location of all saloons within the proposed district. There are four signatures on petition 22. If' the saloon omitted on this map was opened or started after these signatures were secured, the objection would be overruled, for if the opening of a saloon after the signatures were obtained would render a .petition or petitions void, the very object of the law could be defeated and destroyed and rendered nugatory by the mere starting or opening of a saloon shortly before the petitioners were ready to file their petition. But as the signatures on this petition No. 22 were obtained or secured on.July 3, 1911, a month after this *466 saloon was opened or established, it seems only fair that the map attached to this petition should show the location of that saloon. It may have been a mere oversight, but we think this section of the statute mandatory, and these four names will be stricken from the petition.
Objection No. 4, that the petition was circulated for more than three months prior to the filing thereof, will be overruled. The testimony of Mr. Fleming, that he signed the first petition on April'10, 1911, and that his signature was the first attached to any of the petitions, is clear, decisive and uneontradieted.
Certain of the signers testified that they were induced to sign the petition through fraud and misrepresentation. Section 6149 of the General Code provides that no person shall be allowed to .withdraw his signature, unless he can prove it was secured through fraud and misrepresentation. We hold that the burden is upon any person seeking to withdraw his signature; to prove the fraud or misrepresentation. If signers were permitted to withdraw their names after having signed the petitions or authorized their names to be signed thereto, the object of the law would be defeated and destroyed, for the pressure by those opposed to the petition would become so great that many would be induced to withdraw if they could. Hence, before such withdrawals will be permitted, the law requires them to show their signatures were procured or secured by fraud and misrepresentation; and when a signer seeks to have his signature withdrawn because of fraud or misrepresentation, the court will not be unmindful of the fact that he is not acting wholly upon his own initiative. In other words, there arises a suspicion that such signer has been importuned by some interested party to request that his signature be withdrawn, and testimony along that line will be closely serutinized. He must prove the fraud and misrepresentation by a preponderance of the evidence, and his evidence in that behalf will be subjected to close and rigid analysis. During the hearing we struck off six names, mainly on this ground. Since then we have carefully read the testimony on this point, and see ho reason to change the conclusions then reached. The names - stricken off appear in the bill of exceptions, or the record, and need not be repeated here.
*467 The contention that this residence district contains a'block, within the meaning of Sections 6161 and 6069 of the General Code, is not sustained by the evidence. Indeed the evidence clearly indicates that there is not in this residence district a block or territory bounded by four well-recognized adjacent streets containing a block one-half or more of the 'foot frontage of which is occupied by buildings and premises actually devoted to commercial, mercantile, manufacturing or other’ business purposes, not including saloons. This contention or objection of the contestants is therefore overruled.
The case then stands as follows: The number of votes cast at the last municipal election before this petition was filed was 981. The petitioners must have on their petitions as many qualified electors as equal a majority of 981, or 491. The petitions as filed show 565 signatures. It is agreed by counsel that 56 of these names or signatures should be stricken off, and this leaves 509 signatures on the petitions. The court ordered, at the termination of the hearing, that six more names be stricken off; the four signatures on petition 22 are also stricken off, making a total of ten stricken off by the court. Deducting these ten signatures from 509, it leaves 499, or 8 more than a majority of the votes cast in this district at the last municipal election before the petition was filed.
The court therefore holds that the petition is sufficient, and the clerk of the courts is ordered and directed to certify to the Clerk of the City of Cleveland, Cuyahoga county, Ohio, the findings and decision of this court, to be by said clerk recorded in the record of the city of Cleveland, Cuyahoga county, Ohio..
To all of which the contestants except.